UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DEVANTE EPPS

VERSUS

RODERICK BROWN, ET AL.

CIVIL ACTION

NO. 24-175-JWD-SDJ

RULING AND ORDER

This matter comes before the Court on the *Rule 12(b)(6) Motion to Dismiss* (Doc. 21) filed by Defendants, Sid J. Gautreaux, III, Sheriff of East Baton Rouge Parish ("Sheriff Gautreaux") and Roderick Brown ("Brown") (collectively, "Defendants"). Plaintiff Devante Epps ("Plaintiff" or "Epps") opposes the motion, (Doc. 25), and Defendants have filed a reply, (Doc. 27). Oral argument is not necessary. The Court has carefully considered the law, the allegations in the *Amending and Supplemental Complaint* ("*ASC*") (Doc. 17), and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted in part and denied in part.

I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A.  Factual Allegations

The following facts are taken from the *ASC*. The well-pled allegations are assumed to be true for purposes of this motion. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010).

On September 14, 2021, Plaintiff was a pretrial detainee. (*ASC* ¶ 2, Doc. 17.) Brown was a deputy with the East Baton Rouge Sheriff's Office ("EBRSO"). (*Id.*)

On that day, Brown was scheduled to transport Epps from East Baton Rouge Parish Prison ("EBRPP") to the 19th Judicial District Court ("19th JDC") to attend a hearing. (*Id.*) Brown loaded

Epps into the EBRSO transport vehicle. (*Id.* ¶ 3.) When Brown did so, he "deliberately refused to secure Plaintiff with a seatbelt, who . . . was shackled and helpless." (*Id.*¶ 5.) According to Epps, Brown "knew there was an unreasonable risk of harm associated with transporting a shackled person without securing him with a seat belt, and as such, showed deliberate indifference, pre-disposing Plaintiff to the likelihood of injury as it is common knowledge that the use of seatbelts mitigate against same." (*Id.* ¶ 6.)

Brown "began driving in an erratic manner and at an excessive rate of speed with what appeared to be a deliberate indifference and intent of injuring plaintiff." (*Id.* ¶ 7.) Epps "repeatedly asked [Deputy Brown] to slow down and to stop slinging him around inside the" vehicle. (*Id.*)

Brown's erratic driving caused him to crash into the back of a second EBRSO vehicle traveling southbound on I-110. (*Id.* ¶ 8.) Epps was unrestrained and shackled, so "the crashed caused Plaintiff to be violently propelled forward, thereby sustaining bodily injuries." (*Id.* ¶ 9.)

Plaintiff claims that Brown (1) violated Plaintiff's Fourteenth Amendment right to due process; (2) violated Epps's Fourth Amendment protections against unreasonable seizures and excessive force; and (3) is not entitled to qualified immunity. (*Id.* ¶¶ 10–12.) Plaintiff also asserts that Brown acted "with reckless, malice, or callous disregard for [Epps's] Constitutional rights . . . ." (*Id.* ¶ 13.)

Plaintiff also asserts that Sheriff Gautreaux caused his injuries by, *inter alia*, (1) "failing to supervise [EBRSO] employees . . . to follow its policies of restraining inmates being transported with a seat belt[;]" and (2) "failing to supervise and instruct [EBRSO] employees . . . to follow its rules and regulations regarding the safe operation of transporting prisoners[.]" (*Id.* ¶ 17.) Epps also claims that Brown was employed by Sheriff Gautreaux and was in the course and scope of employment, so the doctrine of *respondeat superior* applies. (*Id.* ¶ 18.)

### B. Procedural History

The parties recount the long road from Epps's initially filing suit in the 19th JDC on September 13, 2022, (Doc. 1-3 at 2), until today. (*See* Doc. 21-1 at 3–6.) That history need not be repeated here.

Most relevant, after removal, Defendants filed a motion to dismiss, (Doc. 4), which was denied without prejudice, (Doc. 10). The Court specifically expressed no view as to the merits of the motion and granted leave to amend to cure any deficiencies identified by Defendants. (*Id.* at 1–2.) However, the Court cautioned Plaintiff on several issues, one of which being: "If Defendants file a second motion to dismiss which the Court ultimately grants, it is highly likely the Court will dismiss the claims with prejudice as futile and because of undue delay." (*Id.* at 2–3.)

Defendants then filed a second motion to dismiss, (Doc. 11), which prompted the *ASC*, (Doc. 17). In response, the Court issued an order denying that motion to dismiss without prejudice to Defendants' right to re-urge any arguments made in that motion, if appropriate, in response to Plaintiff's new complaint. (Doc. 18.)

This led to the filing of the instant motion. (Doc. 21.) In sum, Defendants ask the Court to dismiss all § 1983 claims with prejudice for failure to state a claim and to decline to exercise supplemental jurisdiction over all state law claims. (*Id.* at 1.)

### II.    RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co.*, 624 F.3d at 210 (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, [the court] accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *Id.* The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it supported 'by enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct.]'" *Calhoun v. City of Hou. Police Dep't*, 855 F. App'x 917, 919-20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556.)

III.    **DISCUSSION**

   **A.  Preliminary Note**

The Court first notes that Defendants sought dismissal of any claim against Brown in his official capacity and all § 1983 claims against Sheriff Gautreaux. (Doc. 21-1 at 16–20.) Plaintiff

4

responded that he is not bringing either claim. (Doc. 25 at 19–21.) Defendants urge the Court to dismiss these claims with prejudice. (Doc. 27 at 1.)

Contrary to Plaintiff's representations, Plaintiff does in fact allege that Brown was acting in his official capacity, (*ASC* ¶ 10, Doc. 17), and that Sheriff Gautreaux caused Plaintiff's injuries while "acting under color of state law" and by "failing to supervise employees" and failing to instruct them to follow certain policies, rules, and regulations, (*id.* ¶ 17). Since the *ASC* appears to assert the claims in question, and since Plaintiff now concedes that he is not pursuing them, the Court will dismiss them with prejudice.

### B. Qualified Immunity Generally

"Qualified immunity shields government officials performing discretionary functions from civil damages liability 'as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Crittindon v. LeBlanc*, 37 F.4th 177, 185 (5th Cir. 2022) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "Determining whether an officer is entitled to qualified immunity requires a two-step inquiry." *Id.* "First, we ask whether the officer's alleged conduct has violated a federal right. Second, we ask whether the right in question was clearly established at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Id.* at 185–86 (cleaned up). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## C. Fourteenth Amendment Claim

### 1. Parties' Arguments

#### a. Defendants' Original Memorandum (Doc. 21-1)

Defendants first seek dismissal of Plaintiff's claim for deliberate indifference under the Fourteenth Amendment. (Doc. 21-1 at 8.) The Fifth Circuit has purportedly held that "there is no federally protected right to safety restraints in prison transport vehicles," so Plaintiff cannot claim a constitutional violation from the failure to provide a seat belt. (*Id*. at 9–10 (quoting *Jimenez v. Travis Cnty. Sheriff's Dept*., 856 F. App'x 534, 535 (5th Cir. 2021) (per curiam) (remaining citations omitted)).)

Further, Brown's actions do not arise to the level of deliberate indifference. (*Id.* at 10.) For this, Defendants rely on *Nixon v. Neal*, No. 20-2934, 2021 WL 2688950 (E.D. La. June 7, 2021) (collecting cases), *report and recommendation adopted*, No. 20-2934, 2021 WL 2680163 (E.D. La. June 30, 2021). (Doc. 21-1 at 10.) As in *Nixon*, Brown did not know of prior prisoner injuries from the failure to buckle seatbelts, and Brown made no statement reflecting an intent to cause injuries. (*Id.*) In any event, most of Plaintiff's allegations are conclusory and lack the sufficient detail to be considered a well-pled allegation. (*Id.* at 10–11.)

As to Brown's driving, Plaintiff fails to show that Brown had knowledge of a substantial risk of harm and disregarded it. (*Id.* at 11.) Again, Plaintiff's complaint is filled with legal conclusions; Plaintiff fails to describe how the driving was erratic or how he drove the vehicle with the intent to harm Plaintiff. (*Id.* at 11–12.) While Plaintiff alleges he "repeatedly asked [Brown] to slow down and to stop slinging him around[,]" there is no detail as to where Plaintiff was in relation to Brown, whether Brown was able to hear this, and what response, if any, Brown had to these statements. (*Id.* at 12.)

6

Moreover, Brown is entitled to qualified immunity; Plaintiff has failed to plead sufficient facts to show that every reasonable officer would know, beyond debate, that Brown's conduct was unlawful. (*Id.* at 15–16.) Defendants emphasize that clearly established law cannot be defined at a high level of generality. (*Id.* at 16.)

### b.   Plaintiff's Opposition (Doc. 25)

Plaintiff responds that his claims do not arise solely from Brown's alleged failure to secure Epps with a seatbelt; rather, they arise from the fact that Brown knew Epps was shackled and helpless and yet traveled onto I-110 "and intentionally drove erratically and at an excessive speed." (Doc. 25 at 9.) "Brown intentionally disregarded the pleas of pre-trial detainee Epps and others seated as guest passengers, to slow down and to drive in a safe manner," all of which caused the rear-end collision. (*Id.*)

Brown is not entitled to qualified immunity, says Plaintiff, because Brown violated a number of safety laws for operating motor vehicles. (*Id.* at 12.) Epps also relies on *Rogers v. Boatright*, 709 F.3d 403 (5th Cir. 2013), which in turn relied on the Eighth Circuit; both purportedly recognized liability for the failure to provide a seatbelt when combined with the element of reckless driving. (*Id.* at 13–14.) *Jamirez* is also distinguishable, Plaintiff argues, (1) because it was decided at the summary judgment phase, and (2) there, plaintiff had no evidence that the defendant was deliberately indifferent or that the motor vehicle accident was caused by reckless actions. (*Id.* at 14 (citations omitted).)

Thus, Brown's deliberate indifference is demonstrated by (1) Plaintiff being shackled and unbelted; (2) his high rate of speed and erratic driving; (3) Epps and other prisoners "ask[ing] defendant Brown to slow down and to drive in a safe manner[;]" and (4) the fact that "Brown disregarded Mr. Epps's requests to drive safely and laughed at Mr. Epps when he was injured."

(*Id*. at 14–15.) Plaintiff then distinguishes some of the cases Defendants rely upon based on these allegations. (*Id.* at 15–17.)

### c.    Defendants' Reply (Doc. 27)

Defendants reply that Plaintiff has failed to satisfy either prong of the qualified immunity analysis. (Doc. 27 at 1–2.) As to deliberate indifference, Defendants emphasize what a high burden deliberate indifference is before turning to why *Rogers* is distinguishable. (*Id.* at 2.) According to Defendants, in *Rogers*, the driver told another officer about other prisoners being injured when the transport vehicle stopped abruptly and that such incidents "happen[ed] all the time." (*Id.* (quoting *Rogers*, 709 F.3d at 406, 408–09).) Thus, the driver's subjective knowledge of other incidents made *Rogers* different from other cases, so the plaintiff there had a non-frivolous argument for an Eighth Amendment violation. (*Id.* at 3 (citations omitted).) Here, there are no facts from which deliberate indifference can be inferred, and there is no basis to conclude that Brown knew of prior injuries. (*Id.*) Instead, Epps raises new allegations not included in the *ASC*, such as Brown being told by other prisoners to slow down and Brown laughing when Epps was injured. (*Id.*) Rather, Epps has only conclusory allegations. (*Id.* at 4.) Moreover, Plaintiff claims *Nixon* is distinguishable, but he fails to explain why. (*Id.*)

As to qualified immunity, Plaintiff relies on *Rogers*, but that case does not hold that Brown's particular conduct violates the constitution. (*Id.* at 5.) Again, according to Defendants, in *Rogers,* "[t]he Fifth Circuit . . . reversed the district court's *sua sponte* dismissal of a deliberate indifference claim at the initial screening stage and before the filing of any responsive pleadings, but did not hold that the complained-of conduct violated the Eighth Amendment." (*Id*.) Further, Defendants say *Rogers* involved reckless driving *and* knowledge of prior, frequent injuries. (*Id.*) The other Eighth Circuit cases Plaintiff relies upon are persuasive only, and clearly established

8

law requires a "robust consents of cases of persuasive authority." (*Id.* at 6.) Finally, the Louisiana statutes Plaintiff cites do not constitute clearly established law. (*Id.*)

### 2. *Applicable Law*

"The Eighth Amendment ensures the safety of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees." *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019) (citing *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc)). "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners." *Id.* (quoting *Garza v. City of Donna*, 922 F.3d 626, 634 (5th Cir. 2019) (citing *Hare*, 74 F.3d at 643-44))).

Since Epps is making a claim "based on episodic acts or omissions," he must "'establish that the official(s) acted with subjective deliberate indifference.'" *Id.* at 307 (quoting *Olabisiomotosho v. City of Hou.*, 185 F.3d 521, 526 (5th Cir. 1999) (citation omitted)). The test for this is: "(1) 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) 'he must also draw the inference.'" *Id* (quoting *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))).

"The official conduct must be wanton, which is defined to mean reckless. Subjective deliberate indifference is an extremely high standard to meet." *Baughman*, 935 F.3d at 307 (cleaned up). *See also Torres v. Livingston*, 972 F.3d 660, 663 (5th Cir. 2020) (same). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citing *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a

substantial risk of serious harm." *Torres*, 972 F.3d at 663 (quoting *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020) (brackets omitted)).

Preliminarily, "there is no federally protected right to safety restraints in prison transport vehicles." *Jimenez*, 856 F. App'x at 535 (citing *Rogers*, 709 F.3d at 408–09). Thus, "[t]he Fifth Circuit and district courts within the circuit have repeatedly held that the mere failure to provide seatbelts to inmates during transport does not, without more, amount to deliberate indifference." *Nixon*, 2021 WL 2688950, at *8 (collecting cases). To recover for an automobile collision, the plaintiff must show "actual knowledge that the manner in which he was driving created a substantial risk of harm. Merely negligent driving by [the officer] would not support a violation of a constitutional right." *Baughman*, 935 F.3d at 309.

*Rogers* is the leading Fifth Circuit case on this issue. There, Plaintiff alleged (1) that "he was not provided with a seatbelt and that he could not protect himself when the prison van stopped abruptly because he was shackled in leg irons and handcuffs[;]" (2) the driver "knew that other prisoners had been injured when the prison van in which they were riding stopped abruptly[;]" and (3) "[n]otwithstanding that knowledge, [the officer] drove the van recklessly and [plaintiff] sustained serious injuries when [the officer] had to brake suddenly to avoid hitting another vehicle." *Rogers*, 709 F.3d at 408.

*Rogers* surveyed caselaw recognizing that the lack of a seat belt alone is insufficient to impose liability. *Id.* at 408–09 (citing *Cooks v. Crain*, 327 F. App'x 493 (5th Cir. 2009) (unpublished); *Bell v. Norwood*, 325 F. App'x 306, 307–08 (5th Cir. 2009) (unpublished); *Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012)). However, the Court then stated:

> The Eight Circuit, however, has allowed claims to proceed with facts more similar to those now before us—namely, the additional allegation of reckless driving. In *Brown,* an inmate sued the driver of a prison van, alleging that he was injured when the driver operated

10

the van recklessly after refusing to buckle the inmate's seatbelt. [*Brown v. Fortner*, 518 F.3d 552, 559–60 (8th Cir. 2008)]. The inmate was unable to buckle the seatbelt himself because he was shackled. The Eighth Circuit affirmed the district court's order denying the defendant driver's claim to qualified immunity and motion for summary judgment. *Id.* at 559–60.

*Id.* at 409. *Rogers* further explained:

Rogers alleged that he sustained a serious injury because Jose Garcia operated the prison van recklessly, knowing that there was a substantial risk that Rogers would be injured if the van stopped abruptly because Rogers was shackled in leg irons and handcuffs and was not provided with a seatbelt. Rogers's allegation that Jose Garcia told another officer that other inmates similarly had been injured the prior week and during other incidents, which "happen [ ] all the time," states more than mere negligence. Garcia's alleged statement, if true, is sufficient to demonstrate that he knew of the risk to Rogers.

*Id.*

The Fifth Circuit found that *Cooks* and other decisions were (1) "distinguished because those cases did not involve the additional allegation that the prisoner was injured when the defendant operated the prison vehicle recklessly knowing of the danger to the prisoner" and (2) "distinguished because the complaint there was dismissed after the defendant's motion for summary judgment, and not at the initial pleading stage." *Id.* As a result, and based on *Brown*, the *Rogers* court found that the "district court abused its discretion in *sua sponte* dismissing this claim against [the driver] at the initial screening stage and before the filing of any responsive pleading . . . ." *Id.*

Several cases have applied this standard to deny liability. For instance, in *Baughman,* the Fifth Circuit found that the plaintiff failed to meet his burden at the summary judgment stage in part because there was no evidence deputy "acknowledged other prisoners have been injured in a similar fashion" or that the plaintiff "asked to have a seatbelt fastened and [the deputy] refused, or

11

that he asked the deputy to slow down, or other evidence that would be some support for the deputy's awareness." 935 F.3d at 309 (cleaned up).

Likewise, in *Jimenez*, the pro se plaintiff alleged that "defendants showed deliberate indifference to his safety by placing him on a bus without providing him with seat belts and that he suffered severe injuries when a bus sent to replace a disabled transport vehicle backed into the bus where Jimenez was located." 856 F. App'x at 535. The Fifth Circuit held in a per curiam opinion that plaintiff "failed to show that the defendants evinced deliberate indifference for his safety, as there is no federally protected right to safety restraints in prison transport vehicles and because there was no summary judgment evidence establishing that the bus collision arose as a result of knowingly reckless behavior by the defendants." *Id.* (comparing with *Rogers*, 709 F.3d at 408–09).

Similarly, in *Nixon*, the magistrate judge found that such claims were legally frivolous. 2021 WL 2688950, at *9. According to *Nixon*, "[w]hen . . . a plaintiff goes beyond simply asserting the need for an extra measure of safety against the possibility of harm, and also asserts additional allegations that the defendant operated the transport vehicle recklessly, knowing of the danger to the prisoner due to the lack of seatbelts, the § 1983 claim will survive screening." *Id.* at *8 (citations omitted). The *Nixon* plaintiff made "no allegations that [he] knew of prior injuries due to prisoners due to lack of seatbelts during transport, that his driver made any statement reflecting an intent to cause injury through reckless driving, or any other facts to establish more than a negligence claim." *Id.* While the plaintiff's claims may constitute negligence, they were not viable under § 1983. *Id.*

Other cases have allowed claims to proceed along lines similar to *Rogers*. For instance, in *Johnson v. Thaler*, No. 10-25, 2011 WL 4592384, at *5–6 (S.D. Tex. Sept. 30, 2011), the

12

magistrate judge found that a reckless driving claim was not legally frivolous. The court surveyed

case law and concluded:

> Considering the different court opinions, it appears that an allegation of simply being transported without a seatbelt does not, in and of itself, give rise to a constitutional claim. However, if the claim is combined with allegations that the driver was driving recklessly, then their actions may violate the Eighth Amendment. *Brown v. Fortner,* 518 F.3d at 560; *see also Wilbert v. Quarterman,* 647 F.Supp.2d 760, 770 (S.D. Tex. 2009) (denying motion to dismiss a deliberate indifference claim where inmate was denied a seatbelt and the vehicle was driving too fast); *Walls v. Kaho,* No. 5:06–cv–188, 2008 WL 508618 (S.D. Miss. Feb.20, 2008) (unpublished) (transportation of prisoners without seatbelts ***might*** constitute deliberate indifference where plaintiff can demonstrate "a pattern of unconstitutional behavior," such as a large number of prisoners suffering injuries during transport as a result of not wearing seatbelts, and that defendants knew of the injuries and risk); *Barela v. Romero,* No. 06–41, 2007 WL 2219441, at *7–8 (D.N.M. May 10, 2007) (unpublished) (denying dismissal and distinguishing *Dexter* where plaintiff-inmate received no seatbelt and defendants were driving recklessly).
>
> In *Barela,* the court concluded "that a reasonable officer would understand that driving a transport van at high speeds, and stopping erratically, is likely to endanger prisoners who are unsecured and who cannot brace themselves because they are handcuffed and shackled." 2007 WL 2219441, at *7. The court further explained that the plaintiff had "pled that these particular officers were actually aware of these conditions and were indifferent to the consequences of their actions." *Id.*
>
> In this case, plaintiff testified that, not only did he not have a seatbelt, he was chained to another, heavier, inmate. In addition, he alleges that Officer Adams was driving at a high rate of speed and in a reckless manner. For purposes of § 1915A, plaintiff has stated sufficient facts to state a claim of deliberate indifference against Officer Adams, and service will be ordered on this defendant.

*Id.* at *5–6.

   Likewise, in *Miller v. Chapman*, No. 13-367, 2014 WL 2949287, *2 (M.D. La. June 30,

2014), another division of this Court found that it "would be in error to dismiss Plaintiff's Eighth

Amendment claim. . . ." Judge Dick explained, "While Fifth Circuit jurisprudence instructs that an inmate's allegations of being deprived of seatbelts while being transported in restraints alone will not give rise to a constitutional claim, when combined with allegations of reckless driving or a prior pattern of incidents, a viable claim may exist." *Id.* (citing *Rogers*, 709 3d 403, and then citing *Johnson*, 2011 WL 4592384, at *5). The Court concluded that the "Eighth Amendment claim is based not only on the deprivation of safety restraints, but also Defendant Chapman's operation of the inmate transport van." *Id.* Judge Dick also distinguished other Fifth Circuit case law which was "made at the summary judgment stage where evidence had been considered" and noted that "this lawsuit [wa]s still in its infancy and discovery ha[d] not yet begun." *Id.*

Most recently, in *Chatton v. Bosede*, No. 23-212, 2025 WL 848444, at *1 (E.D. Tex. Mar. 17, 2025), the district court found that plaintiff stated a viable claim for deliberate indifference when he pled that defendant "was recklessly handling his cell phone while driving and drove over a curb while Plaintiff was shackled and handcuffed in the transport van without a seatbelt" and that he was thrown from his seat and struck the roof, seat, and side of the van," to the point that "the impact caused him to visibly bleed from his mouth, nose, and head." *Chatton* distinguished *Baughman* on the grounds that it was decided at the summary judgment stage. *Id.*

### 3. Analysis

Having carefully considered the matter, the Court will deny Defendants' motion. In sum, Plaintiffs have, at this stage, adequately pled a constitutional violation and overcome qualified immunity.

Again, stripped of conclusions, the *ASC* alleges that (1) Brown "deliberately refused to secure Plaintiff with a seatbelt," (*ASC* ¶ 5, Doc. 17); (2) Brown "began driving in an erratic manner and at an excessive rate of speed" (*id.* ¶ 7); (3) perhaps most critically, Epps "repeatedly asked

14

[Brown] to slow down and to stop slinging him around inside the" vehicle, (*id*.); and (4) Brown's erratic driving caused the car accident, (*id.* ¶ 8). As in *Rogers* and *Miller*, the Court can reasonably infer that Brown knew Epps was unsecure and helpless, that Brown knew (from Epps's repeated requests) that a substantial risk of harm existed to Epps, and that Brown deliberately chose to drive recklessly anyway. And, as in *Rogers*, *Johnson*, *Miller*, and *Chatton*, Brown drove recklessly despite choosing not to secure Plaintiff. Under the above authority, this is sufficient to establish a plausible claim at this stage.

For the same reasons, Brown's knowledge makes cases like *Jimenez* and *Nixon* distinguishable. Indeed, *Baughman* supports this Court's conclusion, as *Baughman* found no liability in part because the plaintiff failed to present evidence that he "asked to have a seatbelt fastened and [the deputy] refused, or that he asked the deputy to slow down, or other evidence that would be some support for the deputy's awareness." 935 F.3d at 309. But here Epps "repeatedly asked [Brown] to slow down and to stop slinging him around inside the" vehicle. (*ASC* ¶ 7, Doc. 17.) Thus, *Baughman* suggests Epps's claims are viable.

Defendants complain that Plaintiff fails to allege certain details, like whether Brown in fact heard Epps, but Defendants ask for too much at this stage. The only question is whether the *ASC* sets forth enough well-pleaded facts which, when accepted as true and construed in the light most favorable to the Plaintiff, raise a reasonable expectation that discovery will reveal evidence that Brown "was subjectively – actually – 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' from the manner in which he was driving the [vehicle], and that the deputy must also have drawn that inference yet continued to drive dangerously," *Baughman*, 935 F.3d at 308. *See also* Section II, *supra* (Rule 12(b)(6) standard). Epps has met that burden here.

As to the second prong of qualified immunity, "[i]n determining what constitutes clearly established law, [the Fifth Circuit] first looks to Supreme Court precedent and then to [its] own." *Crittindon*, 37 F.4th at 186 (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). "When there is no direct controlling authority, '[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority.'" *Id*. (quoting *Shumpert*, 905 F.3d at 320 (internal quotation marks and citation omitted)). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). "Ultimately, the touchstone is 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Crittindon*, 37 F.4th at 186 (quoting *Shumpert*, 905 F.3d at 321 (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002))).

Considering this standard, the Court finds that the law was clearly established as of the day of Epps's accident that, under *Rogers*, an officer driver is deliberately indifferent to inmate safety by leaving a pretrial detainee unrestrained in the car *and* continuing to drive recklessly despite knowing that he is exposing the detainee to a substantial risk of harm. That is, *Rogers* gave Brown fair warning that his conduct was unlawful, at least based on the facts as pled.

Defendants complain that *Rogers* does not constitute clearly established law because it was decided at the screening stage and not at the motion to dismiss stage, but other Courts have applied *Rogers* to deny a motion to dismiss. *See Chatton*, 2025 WL 848444, at *1. Moreover, *Rogers* relied on *Brown*, which denied qualified immunity on this issue. 518 F.3d 552. The point here is not that

16

*Brown* constitutes a "robust consensus" but rather that the Fifth Circuit incorporated *Brown* into its caselaw to give fair warning to officers for what constitutes unlawful behavior in this circuit.

Defendants cite one decision for the proposition that *Brown* and *Rogers* do not create clearly established law in this circuit. *See Martinez v. Texas Dep't of Crim. Just.*, No. 23-131, 2024 WL 5111975, at *16 (S.D. Tex. Nov. 12, 2024), *report and recommendation adopted sub nom. Martinez v. Trevino*, No. 23-131, 2024 WL 5110066 (S.D. Tex. Dec. 13, 2024) (stating that "*Brown*, as an out-of-circuit decision, is persuasive authority only" and that "[t]he Fifth Circuit in *Rogers* reversed a district court's *sua sponte* dismissal of a reckless driving claim, but did not find that the complained-of conduct violated the Eighth Amendment."). But Defendants cite to no Fifth Circuit case holding that cases like *Rogers*, which evaluated a claim for being legally frivolous, cannot recognize clearly established law. Such a position would make much the above authority, from *Rogers* to *Baughman*, contain considerable surplusage. Nevertheless, if Defendants present the Court with contrary authority, the Court will reconsider its present ruling.

For all these reasons, Epps has sufficiently pled a Fourteenth Amendment claim against Brown for deliberate indifference. Brown's motion will be denied on this issue.

### D. Fourth Amendment Claims

Defendants next seek dismissal of Plaintiff's Fourth Amendment excessive force and unreasonable seizure claims. (Doc. 21-1 at 12–13.) According to Defendants, the Fourth Amendment is inapplicable to a pretrial detainee who is properly arrested and is awaiting trial. (*Id.* at 13 (citing *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 167 (5th Cir. 1996)).) Thus, because Plaintiff alleges he was a pretrial detainee, he has no Fourth Amendment claims. (*Id.*) In any event, Defendants contend that Plaintiff makes no allegation of an unreasonable search or seizure, so this claim is meritless for that additional reason. (*Id.*) Likewise, Plaintiff's excessive force claims are

17

conclusory and thus insufficient to state a claim under the Due Process Clause. (*Id.*) Defendants say Plaintiff must show that the officer purposefully caused him harm and was objectively unreasonable, and, for all the reasons given above, Brown did not use objectively unreasonable excessive force. (*Id.* at 14–15.)

In response, Epps asserts:

> The plaintiff opposes the dismissal of 4th Amendment claims, with prejudice, as the plaintiff's official status has not been verified and supported by certified documentation that will likely be obtained by virtue of discovery. For example, documentation evincing a pre-trial detainee's status is expected to include court orders, release/detention reports, risk assessment documents, pre-trial service reports, arrest reports, charging documentations and/or records of prior offenses will reflect the official status of Mr. Epps, which will confirm whether the 4th Amendment or the 14th Amendment of the Constitution provides a remedy for the violations he suffered. Should information be discovered, which contradicts the plaintiff's belief that he was a pre-trial detainee at the time of the crash, a dismissal with prejudice would impede his ability to pursue claims under the 4th Amendment.

(Doc. 25 at 18.)

Defendants reply that, contrary to Plaintiff's argument, no discovery is needed because Plaintiff alleges he was a pretrial detainee, and there is no allegation that the incident occurred during his arrest. (Doc. 27 at 6–7.) Thus, the Fourth Amendment claim should be dismissed with prejudice. (*Id.* at 7.) Alternatively, Defendants say Plaintiff waived any opposition by failing to meaningfully oppose it. (*Id.*) Moreover, Plaintiff has not overcome qualified immunity, for the above reasons and because he fails to point to binding authority constituting clearly established law for these claims. (*Id.* at 7–8.)

Having carefully considered the matter, the Court agrees with Defendants. "The Fourth Amendment is inapplicable to a pretrial detainee who was properly arrested and is awaiting trial. That detainee has recourse to due process protections, not protection against unreasonable seizures

18

after a lawful seizure has occurred." *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 167 (5th Cir. 1996). *See also Valencia v. Wiggins*, 981 F.2d 1440, 1445 (5th Cir. 1993) ("the Supreme Court's decisions in *Graham* and *Bell* indicate that the due process clause in the Fifth (or Fourteenth) Amendment is the appropriate constitutional basis for pretrial detainee excessive force suits."). Here, Plaintiff pleads that he "was a pre-trial detainee who was scheduled to be transported by . . . [Brown] . . . from [EBRPP] to the [19th JDC] . . . for the purposes of attending a hearing." (*ASC* ¶ 2, Doc. 17.) Thus, he has no viable Fourth Amendment claim.

Moreover, Plaintiff has failed to point to any relevant case law articulating how Brown's conduct constitutes excessive force or an unlawful seizure or how it violates clearly established law, beyond what was given above. Accordingly, any claim for unlawful seizure or excessive force is dismissed on the grounds of waiver and for qualified immunity. *See Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) (collecting authorities on waiver), *aff'd*, No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022); *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) ("to overcome qualified immunity, the plaintiff's version of those disputed facts must also constitute a violation of clearly established law. This requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution." (cleaned up)). Accordingly, these claims will be dismissed.

### E. Punitive Damages

Defendants argue that the Court should dismiss Plaintiff's claims for punitive damages. (Doc. 21-1 at 20.) According to Defendants, Plaintiff's allegations against Brown are conclusory, and Plaintiff cannot recover punitive damages against government agencies. (*Id.*)

19

Plaintiff responds that his allegations for failure to protect "provide the foundation" for his punitive damages claim. (Doc. 25 at 21.) Further, Epps asserts § 1983 claims against Brown only, not Sheriff Gautreaux. (*Id.*)

Defendants reply that (1) again, Plaintiff pleads only conclusions; (2) Plaintiff has failed to address Defendants' arguments and thus waived them; and (3) again, § 1983 does not allow for recovery of punitive damages against a government agency. (Doc. 27 at 8–9.)

"To prevail on punitive damages, Plaintiffs must show that the official conduct was motivated by evil intent or demonstrated reckless or callous indifference to a person's constitutional rights." *Moore v. LaSalle Mgmt. Co., L.L.C.,* 41 F.4th 493, 513 (5th Cir. 2022) (cleaned up). "Reckless or callous indifference requires recklessness in its subjective form, i.e. a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations." *Id.* (cleaned up).

Plaintiff has only one remaining § 1983 claim: against Brown in his individual capacity for deliberate indifference. "Showing deliberate indifference requires showing a defendant was subjectively aware that 'a substantial risk of serious harm' existed and was indifferent to it. Plaintiffs have therefore met their burden [as] to . . . whether [Brown] demonstrated reckless or callous indifference to [Epps's] constitutional rights." *Id.* (reversing the granting of summary judgment on plaintiff's punitive damage claim because questions of fact existed on deliberate indifference). Consequently, the Court will deny Defendants' motion to dismiss the punitive damage claim against Brown.

### F. Leave to Amend

Federal Rule of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson*

*Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (cleaned up). However, "[l]eave to amend is in no way automatic." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994 (citation and internal quotation marks omitted)). The Court can deny a party's request for leave to amend if it has a "substantial reason" for doing so. *Id.* The Fifth Circuit has further described a district court's discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." [*Jones*, 427 F.3d at 994] (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal." *Mayeaux v. La. Health Serv. and Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." *Id.* (citation and internal quotation marks omitted).

*Id.*

In addition, the Fifth Circuit has made clear that "[d]enying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment is futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.* (citing *Briggs*, 331 F.3d at 508).

Having carefully considered the matter, the Court will deny leave to amend. First, as stated above, one factor to consider is whether there have been "repeated failures to cure deficiencies by amendments previously allowed," and another is undue delay. *Id.* (citation omitted). Here, the Court denied Defendants' initial motion to dismiss without prejudice and specifically cautioned

Plaintiff: "If Defendants file a second motion to dismiss which the Court ultimately grants, it is highly likely the Court will dismiss the claims with prejudice as futile and because of undue delay." (Doc. 10 at 2–3.) Plaintiff was thus given a chance to put his "best foot forward," and any failure to do so at this point was the result of undue delay or an inability to plead viable claims.

Consequently, Plaintiffs will not be given leave to amend, and the Court will dismiss all § 1983 claims—other than Plaintiff's Fourteenth Amendment deliberate indifference claim (with its accompanying punitive damage claim)—with prejudice. *See Apollo Energy, LLC v. Certain Underwriters at Lloyd's, Lond.*, 387 F. Supp. 3d 663, 679 (M.D. La. 2019) (deGravelles, J.) (denying leave to amend when plaintiff should have had notice of issue from court's ruling on original motion to dismiss, and when further amendment would be futile); *Skinner v. Ard*, 519 F. Supp. 3d 301, 321–22 (M.D. La. 2021) (deGravelles, J.) (same); *Martin v. Roy*, No. 20-339, 2022 WL 894599, at *13–14 (M.D. La. Mar. 25, 2022) (deGravelles, J.) (same).

### G. Supplemental Jurisdiction

Defendants last urge the Court to decline to exercise supplemental jurisdiction over the remaining state law claims. (Doc. 21-1 at 22.) "[S]ince all federal claims against Defendants are subject to dismissal, Plaintiff's supplemental state law claims should also be dismissed." (*Id.*) Defendants then hammer the statutory and common law factors relevant to this issue. (*Id.* at 22–23 (citations omitted).) Plaintiffs respond that state law does not preempt federal law and that state courts have concurrent jurisdiction over § 1983 claims. (Doc. 25 at 21–23.) Defendants reply that they do not argue preemption but that they instead seek remand because all federal claims are subject to dismissal. (Doc. 27 at 9.)

Having carefully considered the matter, the Court will deny Defendants' motion without prejudice. Defendants' argument was premised on the Court dismissing all federal claims. Since

22

that has not happened, the Court will maintain the action. If the Court later dismisses Plaintiff's remaining federal claim, the Court will revisit this issue.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Rule 12(b)(6) Motion to Dismiss* (Doc. 21) filed by Defendants, Sid J. Gautreaux, III, Sheriff of East Baton Rouge Parish and Roderick Brown is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** in that all § 1983 claims are **DISMISSED WITH PREJUDICE**, except Plaintiff's claim for deliberate indifference under the Fourteenth Amendment and for compensatory and punitive damages in connection with that claim. In that respect, the motion is **DENIED**. Further, Defendants' request to decline to exercise supplemental jurisdiction over the state law claims is **DENIED WITHOUT PREJUDICE** to Defendants' right to re-urge if the remaining federal claim is later dismissed.

Signed in Baton Rouge, Louisiana, on <u>March 27, 2026</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**